Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today, number 23-1162, United States v. D.N.L., Guia-Sendeme. At this time, would counsel for the appellant please introduce herself on the record to  Good morning. Good morning. May I please report, Mr. Federal Court Defender, Delano Deloy, on behalf of the County of D.N.N., Guia-Sendeme. May I please reserve one minute for a vote? You may. You may proceed. Thank you. Who is the average? This is the essential question that the court below failed to answer despite the defense not being consistent. And now at the punishment phase, not the guilt phase, the district court misinterpreted Misinterpreting this fourth prior case law, erroneously found that having simply engaged in the offense at all was sufficient to deny Mr. Guia mitigating moral adjustment to the  The court failed to identify the universe of participants in a criminal activity, of which there were many, place them on continuous relative flexibility, identify the average participant, and then find that Mr. Guia was substantially less culpable and even plainly among the least culpable of the participants in that activity. So we request that the court remand for resentencing the instruction that the court apply the minimal moral adjustment. Well, if it gets remanded, the court has to do what you're saying, the analysis. But ultimately, we can't instruct the court to apply the reduction. If the court could make the determination it applies, could find it minimal, minor, what you have to do is do the analysis. Yes, and the alternative, exactly. If on remand, just with the instruction to at least do the analysis, we would also request that. And the problem here is that they committed legal error in not conducting the correct analysis at all. Because the guidelines here recognize the concept of sentencing relative culpability. When you have a criminal activity that involves multiple participants. So it seems like the issue really is, what is the universe of people? So it seems like there was some suggestion by the district court that the universe is the people on the boat. And if you come to the people on the boat, it's not really clear who's substantially less culpable than the average. So that really seems to be what the dispute is about. How do you define the universe of participants? How do we think about that? Well, the definition of participant is all those that are criminally liable for that activity. And the record was really ample here as to other participants. The defense counsel undisputed, based on the safety valve and other documents, that there were managers. There were people organizing the trip that were identified. There was a group there. So when you say identified, do you mean identified in terms of their role or identified in terms of their identity? Well, I mean, not in terms of their identity by name, but their role. I mean, because the safety valve was able to say, I saw these people organizing, even though he didn't participate in it. There was a recruiter, the person who included him. There was Papa, the man who was driving them around and loading the drugs. There was the captain of the boat who was making all of the decisions on the boat. There were lookouts. So there were a lot of other participants. And I think that the reason why the court here limited it to the two people on the boat is because it was misinterpreting this court's prior decisions, which have made, which have affirmed other district courts' very specific findings based on the record of those cases and sort of felt hamstrung by that. Because it quotes de la Cruz Gutierrez, which comes from, originally from Perez, and Arias Mercedes, which discuss that, you know, there's two people on a boat, and they're on a hazardous voyage to Puerto Rico, and there's a lot of drugs. Well, we can't apply them in the 84. Because it's not the analysis there. It doesn't, it replaces the correct analysis, which this court elucidated in Walker very clearly, with this quote from these other cases that was in Arias. I have a question. I wish it was from Arias, though. Where the court talks about, you know, they're a hypothetical person involved, just as I guess you would speculate that when there's a reasonably understandable drug conspiracy and you sort of know that there are other people involved, but it's hypothetical as far as who they are, what their roles might be, and what we're trying to do is figure out the degree of culpability of this person relative to those others. So how do you distinguish areas from this case? Yeah, well, in this case, the participants were not speculative. We're not saying that it's all people that ever were involved in this drug conspiracy. We have specific people identified very clearly on the record that were part of this venture that ensured that, that made decision-making, that organized, that did all of the things as to this 135 kilos. And the government here even sort of concedes that there are specific roles to be done and identifies those roles for us. But as to distinguishing Arias Mercedes, the record there was different. It only could speak about very hypothetical drug people. I do want to call attention to Arias Mercedes because the reasoning there focused on how the policy behind the amendment to the guidelines in 2015 and 1794 was too limited to not comparing to similar cases of meals. You have to look at this case, which we agree with. But it didn't mention that another policy reason behind that amendment was because this adjustment is being underapplied, inconsistently underapplied. And in added language such as, if this person just has no proprietary interest in the drug and is just being paid to perform certain tasks, then they should qualify. And, you know, in drug smuggling cases, if they're just being used to transport the drug, they should qualify. And that's sort of glossed over. It's not even mentioned. So you're suggesting that in every case, they were qualified. Here you have two men involved with the drugs. In instances like in the case of federal law, they should qualify. I don't know. No, no. It's in a very specific inquiry. We can imagine cases with meals, for example, a professional meal that does this all the time, has discretion in deciding how the venture works, who does it, who contributes. There might not be a large drug trafficking organization. This might just be a few individuals planning drug smuggling together. But we have to look at the record. And the record here indicates that Mr. Kia was at the very bottom of a large drug trafficking organization. But we have very specific individuals beyond just the people on the boat that made this venture work. He was just a very poor financial, straight, straight report acknowledged by factual findings that had nothing to do with the organization. With COVID, he lost his job. He had a baby on the way. He needed some quick cash. He was recruited, which he understood, to be migrants, eventually with drugs. He participated. He pled guilty. Now the question at sentencing is relative to the other people, people planning, organizing. We do this all the time. What is his relative probability for purposes of the sentencing? What would be appropriate for punishment? Let me ask you another question about Judge Arias. When he, or his first wife, when he, Judge Arias, when he sentenced, he said that specifically he would have imposed the same sentence. Notwithstanding, what effect does that have? Well, the problem is that that's not supported on the record. The standard of harmlessness, that statement has to be supported on the record. The judge imposed a 72-month sentence, which it noted that was a downer of Arias because that was deserved. It's a supplemental to Appendix 171. The court notes that the court deemed the sentence out of the advisory guideline range to be the sentence that was justified because it focused exclusively on the mitigation. His personal circumstances, his financial needs, the fact that he went above and beyond the safety valve. He would have to, if the mitigating, if the minimal guidelines were applied, even with all of the other changes, without zero point, with the firearm enhancement, the guidelines would still be 51-63. He would have been imposing a significant upward variance, which he simply could not support on the record because he focused only on mitigation and acknowledged that this decision, or this case, deserves a downward variance. The error was not harmless. I'm on the gun, and I don't understand that argument. It seems to me that, as I understood the record, at least he was aware, or did that before he thought, before the other person had the gun, that that would be enough. He doesn't need to possess the gun himself. It just needs to be reasonably perceivable that another person in the enterprise would have the gun. Yeah, so I would just say briefly that he, it's not, it's very unusual in these type of cases where there are ventures on the votes for, specifically, for there to be, there's no transaction happening, so to have a firearm is not reasonably foreseeable, and he found out about that after he sort of signed up for the venture. It wasn't yet on the vote, right? I mean, that's what I. Yes, yes. Do you agree with that part? Yes, I do, but I also believe that this is a very fact-specific finding that needs to be done by the district court, and it didn't. It recognized the standard, the reasonable foreseeability, but then failed to engage in that analysis, so we would just say it needs to be remanded for the court to do that, and I would rest on the briefs for that issue, because I couldn't have made it any more significant, but I understand the issue, and I think that should have been decided by the district court. Any further questions? Yeah, I just have one. You know, as you point out, this amendment has been in effect since 2015, but have been the guidance for how to apply the five factors, and so did the defendant below urge the court to apply those factors? Oh, very much so. In briefings prior to the sentencing, the defense counsel went factor by factor and applied the facts and explained how the analysis was to be done, reiterated that at sentencing. I mean, when I said it was the average, I was quoting defense counsel below, and he was sort of imploring the district court to apply the analysis that this court later, then Walker clarified, was already available to the court, and, you know, it's acknowledging that this sort of prior case law that is by this court, post-guideline amendment, has been sort of misinterpreted, and it's kind of leading to the exact problem the guidelines were trying to avoid, which was to apply this adjustment more frequently, and the defense counsel below certainly did that. Are there no further questions? I understand. Go ahead. Yes. Which I didn't ask, but got four of these on today. Yeah. Okay. In your mind, in your mind, if we decide that the sentence can be affirmed, I mean, your position is that with the new guideline amendments, we should nonetheless send it back for the court's consideration. Now, why is that? Yes. For under Amendment 821, it's undisputed, I think, that Mr. Giff qualifies for the zero It's a final decision in the district court, but it's still open on direct appeal, so it's our position that the court has the authority to send it back. That seems strange to me, because there's no error in what the district court did. So you might say the law changed while your case was on appeal, and something the district court did is now error that didn't appear to be error. That I understand. But this is not that. This is, there is no error. That was not, and you have a remedy, it seems. Yeah. So that seems an odd way to go about it, would be to send it back. Yeah, our thinking is just that because there's still the availability to send it back, and because the mechanism that's currently being used to make the adjustment has a 2.4, resentencing can be allowed to have the court consider the false reasons why there was an adjustment for zero point offender and perhaps adjust the sentence based on that, instead of just having the two-point adjustment by motion, and that ends the analysis. There's a possibility upon resentencing for the court to consider the reasons behind 821 and perhaps adjust accordingly. I guess what I'm trying to figure out is, substantively, if we send it back pursuant to a directed-to-relief sentence because of mitigating the formal law, is there a difference in how the court approaches it in that context versus if the defendant is rewired to file a motion? Well, if the court's sending it back on both, on both the mitigating rule analysis and 821, I think there's certainly those two interacting with one another. I think that, for example, the zero point offender only applies if they don't have an aggravating rule, so it's kind of directly speaking to the rule in the offense as well. So the interplay between 821, the zero point offender, and mitigating rule could further affect the disreported decision. So my understanding of what you're saying is you could make an argument not only giving me the two points, Judge, but giving me a variance because the idea of the two points somehow gives me, I should get even more, and you can't make that argument under a motion because you're just limited to the mechanical two points. Is that what you're saying? Exactly, and that's significant here because the court very much focused on how this was a deviation from an otherwise law-abiding life and this is the first time on a violent offender, so that was something the court was actually sort of focused on, and then with the proper guidelines and the zero point, the court might even decide to go lower. So that's exactly why there's more ability to have that discussion with the district court. Thank you. No further questions. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the United States please introduce himself on the record to begin? Good morning, Your Honors. William Conner Mink of the United States. Given the discussion that this court just had with the defense counsel, I intend to start my presentation on three issues in particular. The universal participants issue with relation to mitigating law enhancement, second, the harmlessness of any error with regards to that enhancement in this case, and then third, a couple of words about Amendment 821 and how it works in relation to any further proceedings here. I want to start with the universal participants. Now, I know Judge Thompson, you were asking defense counsel a lot about R.I.S. Mercedes. I think it's also worth taking into account this court's precedent in Castillo-Vasquez in this case, and that's specifically because in Castillo-Vasquez, you had a factual situation that was more analogous to what we have here, I think, than perhaps in R.I.S. Mercedes. That's specifically because you can see this in the appellate's open brief in Castillo-Vasquez. In that case, there were also recruiters, there were people organizing the venture, and there were individuals involved in moving Mr. Castillo from Venezuela to the Dominican Republic as part of the drug trafficking offense. Nevertheless, this court affirming in Castillo found no procedural error in the court's decision to rely just on the people involved. So in terms of thinking about whether or not it would be error to engage in that posture, I would submit that Castillo-Vasquez is also particularly relevant on that. Does that make any sense? I mean, I can focus on the case later. Does that even—that does not make any sense. I mean, the idea is, who's doing this crime? I mean, so we should exclude the kingpin who designed and got the drugs and did everything because he's not physically on the boat? I mean, the people on the boat are often likely to be the lowest people, and so you're designing a rule that will say, well, you're on the boat. So you're on the boat, you don't get it. And everybody else who's most likely to be a much more significant person is excluded from the analysis as to why the person on the boat ends up not getting it. That seems entirely counterintuitive to what the commentary and discussion of the reason for the changes in this guideline are. So I think there are a number of considerations. So in terms of the guideline's commentary, right, so I think the way that this analysis typically proceeds is one determines what the relevant conduct is. That would determine the base offense level and then kind of the—what relevant conduct we would be considering participants for in terms of the mitigating role enhancement. Once you have figured out what the relevant conduct is, you need to ask who is a discernible or identifiable role participant in that defendant. And that's because in the mitigating role context, just as in the aggravating role context, the district court's going to have to make a relative culpability determination between the defendant and any other participant. So just knowing that somebody else may have been involved in a crime actually isn't worth very much unless the district court has a basis to determine their relative culpability in that crime. If it can't, then it's— But what do you mean you say discernible or identifiable? That's where I have the difficulty because you can say, okay, I saw the first, you know, ex-person over there loading the drugs on the boat. I have no idea who they are. They didn't get caught. Therefore, in areas, they're unindicted and unidentifiable. But they're identifiable in the sense that somebody necessarily had to be a participant loading the boat. And it doesn't make sense that you can separate that person from the category of culpable people. And I know it has to focus on a specific particular crime, not on a grand conspiracy. It goes without saying that you don't know their specific identities. So I think there's going to be a preliminary factual question in the district court as to whether or not the defendant has met their bourbon-fired opponents of the evidence to sufficiently identify that person and render them discernible. And— What do you mean by that? What is discernible? So Judge Thompson just said, I don't know his name, but he was putting the drugs in the car. Discernible? I think that the district court has to make a—that the district court makes a determination as to whether that's enough information for it to— What word did you make? Me? Yeah. What do you think? Is that person discernible? I think that that person is—it is known that that person exists, but I don't think it's clear what their full role in the drug trafficking offense is, right? They could be involved in other aspects of this. What about putting them in the car? I mean, if they happen to be caught putting them in the car, they would get charged. And depending on the quantity, probably with the distribution and possession, generally. Possibly, but I don't think that it's fair for the district court to say, I don't feel that I have enough information about this person's role in the offense, to exclude them from the mitigating role enhancement. Let me also ask you, in the District Court of Reco, the judges have—most judges have been here for a long time. Even a judge with, you know, a few years experience probably has, I don't know how many of these cases. Same with the prosecutors, defense attorneys. And everybody has a pretty good idea, you know, how these operations work. It's not that you get two people and I'm not going to know you all. Of course, they're there. But, you know, there's a chain of supply. There's a chain that, you know, from wherever it's shipped, there's in-between people that are against their ideas. There's other people, other people, distributors, et cetera, et cetera. So, you have to make that analysis as well. And the court can consider that. I mean, it's, you know, I sentenced in the district, or actually did a couple this year also, a similar case. And it does happen all the time. You know, these are, I always use the phrase, small fish in a, you know, ocean full of sharks. You know, that's kind of very obvious from at least this particular case, of course. So Judge Galbi, in that case, if this court were to adopt a rule that one has to think about all participants in that way, then let me explain to you why I think the district court here actually, in fact, cleared that law. And let me say this. We have a case that's been last year, U.S. versus Walker, and we were there. That's what that case is. You have to look at the universe of participants, and then these participants within, you know, the same voters. I agree with Walker does say that's the analysis, although I think Walker doesn't say that that analysis needs to be laid out perfectly step-by-step on the record, right? In many situations, the district court can even be totally silent on the matter, or certainly the level of explanation that we have here is comparable to what was given in Castillo. So I think that there's no question that the level of explanation on this record is appropriate. We're asking about whether the record bears out that the district court conducted the correct legal analysis. Now, if we assume that we have to take into account all these other people beyond the people on the vote, let me explain to this court why I think the record actually shows that the district court did do that here. And I recognize it's a little bit different than what we said in our answering brief. On a given record, I think this is actually a better reading than the record. And let me go through the citations to explain why that is. But first, coming into sentencing, you have both the defense and the government. Everybody is telling the district court that there are more people involved than just the people on the votes here. There's discussions of hooligans, the people loading the drugs in the Dominican Republic, in Puerto Rico, and so on. So I don't think any of the parties were suggesting to the court that there were only people on this vote involved. Then, after all of that has been noted for the district court, the district court eventually gets to the point in the sentencing where it makes its ruling, right? That takes place on Supplemental Appendix 145. And as it does so, one of the first things that it notes is that Mr. Guillo's defense quote, unfolded in many stages. That shows a recognition that the district court has been paying attention to the arguments presented to it, and is aware that there was planning back in the Dominican Republic over several days. Then there was the eventual loading on the vote, the offloading in Puerto Rico. The offense, so to speak, unfolded in multiple stages. Now, the line that defense counsel, in our answering brief, maybe could have been read we thought to suggest that the district court only focused on these two people. Actually, on the vote, I don't want to suggest that that is not what that line means. And that's because if you look at S.A. 145, what the district court... I understand, and I'll let you get back to your thought. But assuming that's true, it doesn't seem to be in accordance with the law for analysis. I mean, assuming that the court considered those other people, there's nothing on record that suggests it considered the relative culpability of this guy relative to them. Well, so I think... So, two things. I don't think that that level of explanation is required under Castillo or even Walker. The court needs to do the... He has to be able to infer. Certainly. And then, as I walk through, I want to make sure I explain to you why that is. And I actually think that dovetails with exactly what I'm about to say. That line in S.A. 145, the court says, he is one of two crew members on the boat. Now, it doesn't say he's only one of two participants. It's just honing in on the fact that on the boat, he is one of two crew members. And it's worth noting, Judge Thompson, to your question here, that's actually an exceptionally important rule. In cases such as this, Mr. Pio is tasked with transporting $2.7 million worth of cocaine through international waters. It's not a job that is given to someone that the drug smuggling organization has little trust in. In fact, he is carrying the most valuable cargo and is responsible for securing its arrival. He is a guy who wasn't supposed to be on the boat. The other guy doesn't show up, and they say, well, pay us an extra if you get on the boat. Maybe the captain was the guy, but it didn't seem like this guy was some trusted person. So that really doesn't seem to be what this record shows. Well, I do think it's notable that the drug smuggling organization asked him to do it, right? I mean, granted, he was not the original person who was supposed to get on this boat. But when things fell through, he was the person they turned to. And there were clearly other options based on the record, right? There were many other people running around, from lookouts to drivers and the like. But they chose Mr. Pio. At the very least, I don't think it would be clear error for a district court to take a different view of this and to say someone engaged in that type of activity is not plainly the least responsible of people in this context. To walk through a couple other points on the record, so to assure this court— It would just be helpful if the court said that, so we could get an idea that the court actually did the comparative analysis. I'm going to grant that this court could have said more about this district court, but I think under this court's precedent in cases like Casillo or R.I.S. Mercedes, that level of explanation has never been required. I also don't think Walker changes anything in that regard. In fact, I think Walker affirms that the explanation here is more than adequate to deny Henson-Hanson. But there were a lot of the factors that you can't show this guy really had. The sophistication of understanding, the proprietary interest. Yes, there were a lot of drugs, but there was some discussion, well, he knows there's drugs, therefore. But everyone who's convicted knows there's drugs, therefore. So that can be a distinction between who gets a mitigating role and not. So it did not seem like it was the sort of step-by-step analysis to make that comparison between this person and the other people with an eye toward, we should be giving this to people because that's what the 2015 amendment was all about. The spirit of that sort of, let's open this up, seems not to be consistent with what went on here. A couple of points here. I recognize that my time has expired, although I think there's a good deal that can be said. It's sort of going to answer this question. I think in the district court sentencing column, of course, he notes the offenses that Mr. Kia pleaded guilty to. Unusually, well, I don't know if it's necessarily unusual here. Here, one of those offenses is conspiracy to import controlled substances. Mr. Kia entered a straight plea, which means he pled to all the elements of that offense and some of the elements with regards to conspiracy. Well, it had been a plea. He still got to accept the elements of the offense. Correct. It was a plea agreement. Correct. And in pleading guilty and pleading that there's a factual basis, that signals that he normally and voluntarily agreed to enter into a venture to smuggle at least five… That's clear, but then we have to go, that's one thing is guilt-based, then it's sentencing-based, and then that's where the guideline is. I mean, to be a conspiracy, you have to agree, so all that means is I know I'm getting on that boat and there's going to be more than five kilos, and that's all that means. So why does that then – what does that do with excluding someone from saying, yeah, but I'm still a mitigator? It doesn't mean I didn't know what was going on, because if I didn't know what was going on, I wouldn't be guilty. Well, I think it's well done because it shows that he did know what was going on. But everybody knows what's going on. Every person who's convicted knows what's going on, and the whole purpose of the guideline is then to say, of that universe, we have some that get credit because they are lower and less in charge and important to it, and the greater people shouldn't get that credit. So everybody's guilty, but then you're dividing up how to decide which of the guilty people should get this benefit, and that's where I think the government's position isn't in line with what that guideline is all about. Well, so I think that our position – I think we're in agreement. I think you and I might be having some disagreement as to whether or not the district court engaged in the required thorough analysis. And I think that it did, and I would point this court to a couple of more things. It discusses at least two of those five factors in its sentencing conflict. That's more than happened in Castillo. Then it cites to this court's precedent in R.I.M. Mercedes. That is what happened in Castillo, and was deemed an adequate explanation to deny the mitigating role enhancement. So in fact, I think the explanation here clears by balance several of this court's prior cases, and I don't understand how this court could say that the explanation… Walker doesn't overrule anything, but he can certainly say that Walker clarifies what the court should be doing. I think that's right, but let me explain why this case… Walker actually came out after the sentence here, if I'm not mistaken. That's correct, Your Honor. And let me explain why I think Walker actually supports the result in this case, and that's because of two key differences in Walker. In Walker, there was zero explanation on the record. The district court didn't give any explanation why it denied the mitigating role enhancement. That's clearly different from the posture here. Second, in Walker, the government's arguments in… and the PSR's analysis didn't queue to the sort of analysis that's prescribed in the guidelines, whereas in this case it did. You can see that in our objection to the PSR's original granting of the minimal role enhancement, and you can see that in the PSR's agenda. People are pointing to the relevant factors and considerations. So I think Walker is different in this case for those two reasons. One last thing to flesh this out a little bit on this issue, and I'm happy to talk about the other questions if I can, as I'm well over my time. I think it's important to note that in this sentencing court, 3553A, we have another indication that it understood that the universe of participants here was broader than just the people on this floor. And that's because on Supplemental Appendix page 171, the court specifically describes Peter's venture and says, also part of the venture were two other individuals who were responsible for the monitoring of the law enforcement presence. So I think even within just the sentencing record itself, it's clear that the district court understands that the universe of participants is broader than just the people on the old floor. But it's more than that. It's identifying the universe and then it's comparing comparability. I agree with that. And I think that the district court's explanation here as to Mr. Guillo's role on this vote, his role in smuggling valuable narcotics from the Dominican Republic to Puerto Rico, is sufficient for this court on a clear-air review to look at that and say, the district court did that weighing of culpability against these other people. Now, granted, I think other district judges on this record could potentially have reached a different conclusion as to the correct result. I think, I think, candidly, this case, in my opinion, rests on the border of a no-mitigating rule enhancement and a minor rule-mitigating enhancement. And a district court could possibly go either way. But this court, this particular district court decided that no enhancement was appropriate. I think that survives a clear-air review. And I think that this discussion is ample enough to assure this court that it conducted the proper analysis. Could you address briefly just harmlessness? I can. If there was ever. Yes. And I'll also go to 821 if this court wants. As to the harmlessness issue, I think it's relevant here that the RA specifically said this is the same sentence that I would impose even if it was adhering to the Guidelines calculations. That's the sort of explicit statement that this court has generally looked at and said, on this record, we conclude that there's a fair assurance. But then if it comes to the, this is the part of this I don't quite understand. So then if you accept there should have been the mitigating rule for purposes of the assumption, right? Then he's guaranteed an upward variance, right? At that point, it's above the Guideline ranges. At that point, if you said he would get the four-level reduction assumption then the sentence imposed is above that, right? Then, to affirm on harmlessness, don't we have to then find a sufficient explanation of why I, the District Court Judge, would have imposed an upwardly varying sentence then? Okay, so there's actually a good bit in here and I'm going to pack it a bit but I promise to answer all of it. So the first thing is, for Mr. Keough's current sentence to have fallen out of the Guidelines range that would have applied if he were given a mitigating rule enhancement, he needed to get above the minor rule enhancement, right? If he only got the two points in the minor rule enhancement, how this all works out is his current 72-month sentence would actually fall within the Nana Political Guidelines range. So in this Court's Harmlessness Inquiry it has to conclude the District Court was going to give more than the two-point minor rule enhancement. Only then do we even get to this question that you're positive, Keough, judging from a, okay, we have a now upwardly variant sentence that's been imposed on eroding his Guidelines and then we ask, and then what I hear you say is did the District Court need to give some sort of explanation beyond the mere statement that I would have imposed the same sentence? Respectfully, I don't think that's right and I think that's because the general gestalt of Harmless Error Review in the Sentencing Guidelines context is that this Court is asking whether or not it can say with fair assurance that the District Court would have done the same thing. When I put on a beyond a reasonable doubt Harmless Error Statement, right? We're just on a can we say with fair assurance that the Court would do that? Here, Judge Arias quite clearly said that. I think something's wrong. No, the sentences this is what I don't understand the sentences don't get affirmed just because the judge says I would do that the judge has to say I would do that and then we have to say and that was a justifiable thing to do and why is it a justifiable thing to do? Because you've given the judge a sufficiently a sufficient explanation for us to understand your thinking and that's a reasonable outcome and when the judge just says I would have done it anyway that's okay but then we're not really in a position to do the rest of what we need to do to determine that it was a substantively reasonable sentence Judge, I'm aware of no case from this Court where upon finding awareness the Court makes an explicit statement that it would have imposed the same sentence regardless of guidelines Does that make sense to you? How does that make sense? I think it makes sense because what we're asking here isn't about the actual substantive reasonableness of the sentence we're asking whether or not the District Court would have imposed the same sentence despite the guidelines there they're two separate analytical words now granted the defendant could also make a substantive reasonableness challenge to the variant sentence I don't understand one of those two that have been made here and maybe in that case the interaction of those two challenges might play out in the way that you're describing here but when we're just confined to whether or not the District Court would have imposed the sentence despite inherent guidelines we just ask does the record before us give us a good reason to believe that the District Court would have done that I don't think it can get any more clear than the District Court explicitly saying yes I would have done that but it still has to be we still have to be convinced that the sentence imposed was untethered to the guidelines and it seems that when the District Court talks about understanding the difference between the guideline if the role of justice is applied in the guideline if not the court is explicitly talking about the guideline and it's hard for me to at least understand why that would be a sentence untethered to a recognition of what the guidelines were right so I think two things about this case are notable number one the District Judge has already untethered his sentence from what he believed to be the guidelines range in this case like he downwardly varied from Mr. Diaz the guidelines range that was calculated there one of them one of them right and then it would represent outward variance potentially from other guidelines range that might be in play if there's error I think you know in that sense that it's a sentence that's already disconnected from the guidelines range in this case now I think you can also look to the District Court's call output here in the 35-53a context and see certain factors that would justify an outward variance in the District Court's find the most notable one to me is he specifically knows that Mr. Kiyoba had received a safety valve relief in this case but he was Judge Eriksberg's thought was never on the record for contemplating doing outward variance he certainly and I think that's because he believed that he had calculated the guideline range correctly I agree with that  if you need to conserve time for everybody in other cases raising these similar issues but if you could 30 seconds if you want to say anything about amendment 821 certainly I will I think the correct later approach is for this Court just to affirm the sentence and then Mr. Kiyoba can proceed with filing a motion for relief under 3582C2 and the District Court request this Court shouldn't remand it for a sort of reconsideration I think if we were to remand on any other ground the District Court then would have an opportunity to touch the event in that way that's correct because the sentencing would take place based on the sentencing guidelines now in effect for the District Court and that would include 4C1.14 Thank you Thank you Mr. Lord, if you don't agree with all of the prosecutions today we assume the other world are going to incorporate some of these arguments it will be easier to be very honest when I saw it was up first I knew I was going to have a lot of questions there's a column there so they can buy you lunch afterwards thank you Thank you Mr. Arroyo you're welcome Thank you again Jermaine Arroyo on behalf of Jermaine and DSMN I want to briefly talk about the number of  I think it is to defy the record and the sort of logic to say that there were not more participants than were just on the vote and also comparing to other cases on standard those are facts but to that case we have to look at comparing them to people in this venture so to say similar to what happened with Leo is not the right standard we have to look at what he did here relative to everybody else and the district failed to do that what if it were just the guy on the vote so the other guy on the vote seemed to be more helpful than him oh certainly so it's not a median it's a mean right so people get I mean I know it's not numerical let's do it numerically you could be a hundred and I could be a ten and therefore even though there's two of us if we did a median that wouldn't work but if you divide those numbers up it's a fifty five and if I'm a ten and you're a hundred do I get it and that's exactly what Walker said it's sort of a weight you kind of look at it relatively now that you mention Walker let me say this because Judge Arias did not have the benefit of Walker when he sent and I believe most of all the appeals that we have today did not have the benefit of Walker wouldn't it be perhaps prudent for a man to simply consider Walker and resend it again and maybe none of these issues will resurface again well I think that the defense counsel below did propose the exact analysis that Walker because it's Walker is just taking from the guidelines and the defense counsel below did tell the court the exact analysis that was to be done so it's not that the court didn't have the benefit of knowing what the correct analysis was so yes Walker is reportedly instructive on remand but it's not just Walker it's fair to say that our precedent might be working in this area until Walker was pretty definitive definitively spelled out exactly the mechanism going by doing this that it certainly has made it less important as far as what the judicial courts are expecting yes and that's the main thing here because the district court really did fail to do any of that analysis even though the defense counsel did tell them so Walker can be very instructive there and I also just want to briefly say that the government mentioned that you know I mention this because it pops up a lot in cases that because we have a lot of drugs we must be trusted and all of that two things I think here that's an impermissible inference based on what your honor said that he was a nobody he wasn't even supposed to be on the boat and number two the district court did not rely on that reasoning here that was not defined by the district court so I just want to make that clear and then also the the fact that there is this case I would say we have a very clear record here even if we can't say you know I have a social security number of each of the people but there's clear participants but the fact that we can't define super definitively their roles and who they are and all of that it's a factor to be considered for men on the boat so the guidelines of 3B1.2 application number 4 say that the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of the others is indicative of a role of a minor participant that is the crux of all of this it shows that he doesn't know much so even despite that though we do have quite an ample record here and it is legal error to say that it was just the people on the boat and I also think that the fact that the argument by the government that he was just sort of saying those were people there and not  so I think it's pretty definitive that it was saying that only those people were on the boat were the participants for purposes of mitigating the role and that  I'm referring to yeah very well they're gonna buy your boat that's right thank you counsel that concludes argument in this case